IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Thomas W. Cole,                    :
              Plaintiff          :        Civil Action 2:13-cv-00250

      v.                           :        Judge Economus

Carolyn W. Colvin,                 :        Magistrate Judge Abel
Acting Commissioner of Social Security,
              Defendant          :

**REPORT AND RECOMMENDATION**

Plaintiff Thomas W. Cole brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>** On March 29, 2001, plaintiff Cole suffered a work-related injury in which a stairway caved in causing him to fall onto a concrete floor. He broke his right tibia and had an ankle fusion. He has undergone multiple surgeries for his injuries. He also is diagnosed with diabetes, obesity, and sleep apnea. The administrative law judge concluded that Cole retained the residual functional capacity to perform a reduced range of sedentary work.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge violated the treating physician rule; and,

• Her determination that Cole did not have a severe psychological

impairment is not supported by substantial evidence.

**Procedural History.**  Plaintiff Thomas W. Cole filed his application for disability insurance benefits on March 2, 2009, alleging that he became disabled on September 30, 2006, at age 37, by a broken tibia and fibula in his right leg, ankle fusion, sleep apnea, diabetes, and a blood clot in his left leg.  (R. 109, 127.)  He was insured for disability benefits through December 31, 2011, when he was 42 years old. The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On July 28, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 65.)  A vocational expert also testified.  On August 31, 2011, the administrative law judge issued a decision finding that Cole was not disabled within the meaning of the Act.  (R.  28.)  On February 8, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1.)

**Age, Education, and Work Experience.**  Thomas W. Cole was born June 3, 1969. (R. 109.) He has a high school education.  He is trained as an electrician. (R. 132-33.)  He has worked as an electrician and a delivery driver.  He last worked September 30, 2006. (R. 127.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Cole's testimony as follows:

At the hearing, the claimant testified that he is unable to work due to the limiting effects of a right leg impairment resulting from a workplace accident. The claimant explained that while on the job, the staircase below him gave out and he fell eight feet backward into the basement. When he landed, he completely shattered his right leg. For treatment, the claimant underwent surgery to insert a plate and screws to stabilize the leg. However, the claimant indicated that he developed infections and the hardware had to be removed. In addition he underwent fusion of his ankle. In total, the claimant estimated that he has had eight surgeries on his leg and an additional surgery on his hip. He explained that his physicians have stated that there is no further surgery that can be performed to improve his condition.

The claimant described his primary symptoms as swelling and pain. He asserted that he normally limps because his leg is aligned incorrectly and he walks on the side of his foot. He acknowledged engaging in pain management treatment, which consists of taking pain medication. He admitted that the medication provides some relief. However, when the pain is at its worst, about two to three times per week, the claimant cannot concentrate.

As to specific limitations, the claimant estimated that he can walk about 100 feet at a time before his back gets achy and his leg hurts too much, that he can stand approximately twenty minutes, and that he can lift about fifteen pounds. He stated that his hands tingle a lot and that he has trouble feeling things, which may negatively affect his ability to write legibly. Regarding daily activities, the claimant admitted that he can independently perform self-care tasks like grooming and dressing. He denied doing any cooking during the day, loading or unloading the dishwasher, vacuuming, or doing the grocery shopping. The claimant acknowledged being able to do the laundry. He estimated that he leaves his house about three times per week. He stressed that he spends much of the day lying down because elevating his leg helps to relieve the pain and swelling. Approximately, the claimant lies down for fifteen to thirty minutes at a time. At night, the claimant often experiences sleeplessness.

(R. 23.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Daniel Badenhop, M.D. On March 8, 2004, Dr. Badenhop began treating Cole for diabetes, sleep apnea, and problems related to his lower leg and ankle. He noted that plaintiff was stable with treatment. Plaintiff experienced persistent pain in his leg and ankle, and his ambulation was markedly limited. (R. 208-10.)

On November 13, 2007, plaintiff reported soreness related to his right leg injury. He leg was slightly red. (R. 268.) Throughout 2006, 2007 and 2008, plaintiff reported continued soreness as a result of his right leg injury. (R. 261, 262, 264, 265, 266, 267 269. 284) On January 14, 2009, Dr. Badenhop noted that plaintiff continued to have swelling in his right ankle, which was painful.(R. 260.) On February 18, 2009, Dr. Badenhop noted that plaintiff had edema and mild erythema in his right lower extremity. He had diffuse tenderness, but he was neurovascularly intact.

In July 2009, Dr. Badenhop completed a form for the Bureau of Disability Determination. He treated plaintiff for a fixed right ankle/foot status post fraction and repair.  He had limited range of motion in his right ankle and foot, which impacted his gait. Plaintiff has been able to bear weight on his right ankle since 2002. (R. 297-301.)

On August 26, 2009, Cole saw Dr. Badenhop for his ankle and leg pain. On examination, Dr. Badenhop found mild erythema of the right ankle that had been

4

present intermittently since his surgery. Edema was 2+, and there was diffuse tenderness. Dr. Badenhop continued to prescribe Darvocet and Neurontin. (Tr. 350.) On January 13, 2010, Dr. Badenhop found mild left ankle edema that was non-tender. The ankle had a normal range of motion and normal sensation. He refilled the Darvocet and continued the Neurontin. (Tr. 346.)

On February 15, 2010, Cole told Dr. Badenhop that his left foot was swollen and painful. On examination, there was mild edema and erythema of the dorsal left foot and left ankle. There was a normal range of motion and normal sensation. (Tr. 345.) On October 12, 2010, the left ankle again exhibited mild, non-tender edema. There witnesses a normal range of motion and normal sensation. Dr. Badenhop prescribed Anaprox-DS 550 mg., twice a day for arthritis of the knee and lower leg. Other medications included Darvocet and Neurontin. (Tr. 343.) The right ankle had mild erythema and was diffusely tender. It was neurologically and vascularly intact. (Tr. 351.) On May 4, 2011, Dr. Badenhop found mild edema and erythema over the dorsal left foot. The range of motion was intact. Sensation was normal. There was mild left ankle edema. (Tr. 341.) Dr. Badenhop continued Cole on Lortab, 500 mg. every three hours and Neurontin. (Tr. 342.)

On June 8, 2011, Dr. Badenhop completed a Medical Source Statement. (Tr. 402-06.) Dr. Badenhop reported that plaintiff continued to experience pain, tenderness, decreased range of motion, and edema in his right ankle. He had swelling and walked with an abnormal gait. (Tr. 402.) Dr. Badenhop said that Cole often experienced pain

5

severe enough to interfere with attention and concentration. He had a slight limitation in his ability to deal with work stress. (Tr. 403.) Dr. Badenhop opined that plaintiff could sit continuously for 2 hours at a time and then he needed to stand and/or walk for 15 minutes before returning to a seated position. Dr. Badenhop indicated that it was medically necessary for Cole to elevate his right leg to minimize pain. (*Id.*) Plaintiff could sit for a total of 6 hours in a day. He could continuously stand and/or walk for 1 hour before needing to sit. He could stand or walk for a total of 1 hour per day. He would not need to rest by lying down during the work day. (Tr. 404.) Dr. Badenhop opined that plaintiff could occasionally lift and carry up to 10 pounds. He could never carry more than 10 pounds. He could occasionally stoop, but Cole could never engage in forward or backward flexion or rotate to the right or left. He could never reach or handle. (Tr. 405.) Dr. Badenhop opined that plaintiff would be absent from work more than 3 times a month. (R. 406.)

<u>Brian L. Davison, M.D.</u> In a December 13, 2005 letter, Dr. Davison stated that plaintiff had chronic osteomyelitis of the right tibia, which had required a resection and later a tibiotalar arthrodesis using bone transport with an Ilizarov device. Plaintiff complained of pain in his ankle when he stood. He used a Jobst stocking for swelling. Dr. Davison indicated that his symptoms seem to be "pretty much stable." (R. 247.) Cole walked with an antalgic gait with a stiff lower extremity about the ankle. His foot and ankle region was stable. He had a mild amount of motion through the forefoot and midfoot, which was about 10 degrees at most. He had a very stiff subtalar joint with no

6

real subtalar motion. He had pain to palpation over the distal fibula and lateral gutter of the ankle. Plaintiff had had no changes over the past 1½ years and continued to be stable. *Id.*

Diane Manos, M.D. On April 20, 2009, Dr. Manos, a State agency reviewing physician, completed a physical residual functional capacity assessment (R. 289-96.) Dr. Manos opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Cole could stand and/or walk at least 2 hours in an 8-hour workday. He could sit for a total of 6 hours in an 8-hour workday. He could not push and/or pull with his lower extremities.

Dr. Manos opined that plaintiff could occasionally climb ramps or stairs, but he could never climb ladders, ropes, or scaffolds. Cole could occasionally crouch and crawl. Dr. Manos concluded that plaintiff's allegation that he could walk or stand for up to 40 minutes at time until his right lower extremity caused him pain was credible. (R. 294.) Dr. Manos noted that Dr. Badenhop had indicated that Cole was markedly limited in his ability to ambulate without providing specific limits. Dr. Manos concluded that despite the lack of specificity in the statement, his opinion was supported by the medical evidence of record and entitled to weight. (R. 295.)

On November 11, 2009, Maria Congbalay, M.D., a State agency reviewing physician, noted that there had not been a substantial change in plaintiff's condition and the initial residual functional capacity assessment was affirmed as written. (R. 328.)

**Psychological Impairments.**

T. Rodney Swearingen, Ph.D. On August 20, 2009, Dr. Swearing, a psychologist, performed a psychological evaluation at the request of the Bureau of Disability Determination. Plaintiff Cole graduated from high school in a vocational program. He was placed in special education classes beginning in the third grade. He did well in vocational school.

Cole previously worked as an electrician and a delivery truck driver. He had to quit his job as a delivery truck driver because of his inability to lift things and because he fell asleep while driving.

During the examination, Cole was cooperative but somewhat guarded. He was restless, tearful and exhibited signs of anxiety. Cole's affect was reactive with an anxious quality. He had a good appetite, but he reported he had intentionally been losing weight. He had difficulty falling asleep and staying asleep. He slept 6-8 hours a night and napped during the day. He reported being depressed about his physical limitations. He denied suicidal ideation or feelings of being helpless or hopeless. His energy level was fair. He reported worrying a lot. Cole was oriented in three spheres. His immediate auditory skills were impaired as he was only able to recall four digits forward and three in reverse. His short term memory also was impaired. His ability to think abstractly was limited. His concentration and attention were good. He had no

difficulty understanding or following simple instructions. Based on limited testing, Dr. Swearingen opined that plaintiff's judgment was mildly impaired.

Plaintiff lived alone in an apartment. He spent his days at home. He walked a little and went to appointments. He watched television. He socialized with a neighbor occasionally. At home, he cooked and cleaned. He was able to shop.

On testing, Cole obtained a full scale IQ of 77. Dr. Swearingen diagnosed borderline intellectual functioning. Plaintiff was also diagnosed with an adjustment disorder with mixed anxiety and depressed mood. He was assigned a current Global Assessment of Functioning ("GAF") score of 62. Dr. Swearingen concluded that plaintiff was mildly impaired in his ability to relate to others. He was able to follow simple instructions, but he was likely to have moderate difficulty understanding, remembering and following complex instructions due to his cognitive impairment. His ability to withstand stress was mildly impaired. (R. 305-09.)

Caroline Lewin, Ph.D. On September 26, 2009, Dr. Lewin, a State agency reviewing psychologist, completed a mental residual functional capacity assessment and a psychiatric review technique. (R. 310-27.) Dr. Lewin opined that plaintiff was markedly limited in his abilities to understand and remember detailed instructions and to carry out detailed instructions. Plaintiff was moderately impaired in his abilities to maintain concentration for extended periods and to respond appropriately to changes in the work setting. (R. 310-12.)

Dr. Lewin indicated that plaintiff was diagnosed with borderline intellectual functioning and an adjustment disorder with mixed anxiety and depressed mood. Dr. Lewin opined that plaintiff had moderate restriction of activities of daily living, mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. He had no episodes of decompensation. (R. 314-27.)

**Administrative Law Judge's Findings.**

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since September 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: residual effects of right leg and ankle fractures; and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: The claimant cannot operate foot controls with the right lower extremity; cannot climb ladders, ropes or scaffolds; and can only occasionally crouch, crawl, and climb stairs.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on June 3, 1969 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10.    Considering the claimant's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2006, through the date of this decision (20 CFR 404.1520(g)).

(R. 20-28.)

**<u>Standard of Review</u>**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

11

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge violated the treating physician rule. Dr. Badenhop

   estimated that on average Cole would miss more than three days of work a month

   from work as a result of his impairments or for treatment. The administrative law

   judge rejected this opinion on the basis that it was inconsistent with his treatment

   history because plaintiff was seen by Dr. Badenhop on a quarterly basis. Plaintiff

   argues that the administrative law judge's rejection was based on a mistaken

   reading of the question. It was not simply asking about absences from work related

   to obtaining treatment. Absences could also be attributed to his medical

   impairments. Plaintiff maintains that Dr. Badenhop never suggested that Cole

   would require treatment three times per month. Dr. Badenhop also concluded that

   plaintiff would often have pain severe enough to interfere with his attention and

   concentration. In the questionnaire, "often" represented the midpoint of a scale

   comprised of never, seldom, often, frequently, and constantly. At the hearing,

   counsel quantified that degree of interference as off task or nonproductive about 25

   percent of a typical workday. The administrative law judge failed to address the

   specific pain-related limitation to his attention and concentration. Plaintiff maintains

that this was not a psychological limitation because it was explicitly based upon the frequency and severity of pain, and it appears that the administrative law judge may not have considered this specific limitation. Plaintiff further argues that the administrative law judge appears to have adopted Dr. Badenhop's opinion that Cole's combined capacity for sitting, standing and walking would not be sufficient to maintain full-time employment. Dr. Badenhop found that Cole's combined total capacity to sit, stand and walk during an eight hour workday was only 7 hours. The administrative law judge gave significant weight but not great weight to Dr. Badenhop's opinion and gave substantial weight to Dr. Manos, the State agency physician who reviewed the medical evidence two years before the date of her decision. Plaintiff argues that the administrative law judge's findings are ambiguous, and there is a direct contradiction between her formulation of residual functional capacity and her reliance on differing sets of limitations. The administrative law judge erred by applying the sedentary label before adopting function by function limitations which would properly determine the exertional level.

- The administrative law judge's determination that Cole did not have a severe psychological impairment is not supported by substantial evidence. Dr. Caroline Lewin, the State agency reviewing psychologist concluded that plaintiff was markedly limited in his abilities to understand and remember detailed instructions and to carry out detailed instructions. Plaintiff was moderately limited in his

abilities to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting. The administrative law judge improperly rejected the only two psychological opinions in the record. The administrative law judge gave little weight to Dr. Lewin's opinion because she did not personally evaluate plaintiff and did not have the benefit of a complete record. Dr. Swearingen's opinion was discounted based on the lack of treating relationship. The administrative law judge improperly concluded that Dr. Swearingen's diagnosis of borderline intellectual functioning was invalid and that based on his GAF score plaintiff could not have a severe mental impairment. The administrative law judge failed to pose a hypothetical question to the vocational expert that fully accounted for the reasonable limitations opined by Dr. Lewin, and, as a result, there is no substantial evidence that any jobs exists for an individual with plaintiff's limitations. Because the administrative law judge substituted her own lay interpretation for the opinion of the psychologists.

14

**Analysis.**  Treating Doctor: Legal Standard.  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

_____

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimis. Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 380 (6th Cir. 2013).

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

16

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[3]. *Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[4] *Gayheart,* 710 F.3d at 375.

The Commissioner has issued a policy statement, Social Security Ruling 92-6p, to guide decision-makers' assessment of treating-source opinion. It emphasizes:

1.    A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2.    Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.    Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

_____

[3]Social Security Ruling 96-2p provides, in relevant part:

. . .

6.    If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

[4]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the treating-source opinion

18

controlling weight.  20 C.F.R. § 404.1527(c)(2)[5]; *Gayheart,* above,710 F.3d at 376, 2013 WL 896255, *10.

If there are good reasons to find that the treating-source opinion is not controlling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources[6]. The Commissioner's regulations require the decision-maker to consider the length of the relationship and frequency of examination; nature and extent of the treatment

---

[5]Section 404.1527(c)(2) provides, in relevant part:
 If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. *When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii)* of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion

(Emphasis added.)

[6]Even when the treating source-opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:
Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and labora-tory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weigh-ed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through (6). Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007). This procedural requirement "ensures that the ALJ applies the treating physician rule and

20

permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).Moreover, the conflicting substantial evidence "must consist of more than the medical opinions of nontreating and nonexamining doctors." *Gayheart*, 710 at 377. Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson*, 378 F.3d at 544; *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security*, 486 F.3d at 242; *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

 <u>Treating Doctor: Discussion</u>. The administrative law judge concluded that the opinion of Dr. Badenhop, plaintiff's treating physician, was not entitled to controlling weight. The administrative law judge rejected outright some of the opinions of Dr. Badenhop, but his opinion was accorded some weight:

> As for the opinion evidence, Daniel Badenhop, M.D., the claimant's primary treating physician for his musculoskeletal impairments submitted a medical source statement. Dr. Badenhop suggested that the claimant could sit for two hours before alternating postures and stand for 15 minutes at a time before sitting down again. He added that the claimant

could sit for a total of one hour in an eight-hour workday (Exhibit 14F, pp. 3-4). Dr. Badenhop indicated that the claimant did not need to lie down during the day (Exhibit 14F, p. 4). He determined that the claimant could lift up to 10 pounds occasionally, could balance and stoop occasionally, and would be absent more than three times per month as a result of the impairments or treatment (Exhibit 14F, pp. 5-6). . .

In assigning weight to Dr. Badenhop's opinion, the undersigned notes that Dr. Badenhop has treated the claimant since the surgical repair of the claimant's right leg and ankle in 2001 (Exhibit 14F, p.2). Additionally, Dr. Badenhop's opinion does not deviate from the residual functional capacity outlined in this decision. However, Dr. Badenhop's opinion regarding absences is not supported by any explanation and the evidence shows that the claimant has received treatment on a quarterly basis, much more infrequently than the three times per month suggested by Dr. Badenhop. Apart from this assessment, Dr. Badenhop's opinion is given significant, but not great weight. Moreover, Dr. Badenhop's opinion regarding the claimant's mental capabilities is given little weight as this component of his assessment is outside of his medical specialty.

(R. 25-26.) Plaintiff argues that the administrative law judge failed to acknowledge that Dr. Badenhop opined that plaintiff could only engage in sitting and standing and/or walking for a total of seven hours rather than eight. The administrative law judge adopted a residual functional capacity that incorporated aspects of the opinions of both Dr. Badenhop and Dr. Manos. Plaintiff maintains that in doing so the administrative law judge erred by not including some of the limitations identified by Dr. Badenhop. The administrative law judge gave the opinion of Dr. Manos substantial weight with one exception by limiting plaintiff's exertional capacity to sedentary work. Dr. Manos opined that plaintiff could stand and/or walk for fours hours, placing him between the light and sedentary levels. The administrative law judge concluded that plaintiff could only stand and/or walk for two hours. Plaintiff argues that Dr. Manos's opinion should

22

not be controlling since it was based on Dr. Badenhop's office notes from March 2008 to March 2009 and did not consider the medical evidence (Exs. 10F through 16F[7]) from then through the date of the decision.

It is the role of the administrative law judge to determine a claimant's residual functional capacity:

> Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

20 CFR § 404.1527(d)(2).

The administrative law judge did not err in rejecting the opinion of Dr. Badenhop that plaintiff would be absent from work three or more times per month. The administrative law judge noted that Dr. Badenhop failed to provide any supporting explanation for this statement, and it was clear that treatment alone could not account for such absences. Without any supporting documentation in the medical evidence of record, this opinion was not entitled to weight. Although the administrative law judge failed to note that Dr. Badenhop had opined that plaintiff's pain would impact his ability to concentrate, the administrative law judge indicated that she found plaintiff's allegations concerning the extent of his pain to not be credible. Plaintiff did not require the use of narcotic medications, and he engaged in a wide range of daily activities. *See*

---

[7]These medical records relate mainly to treatment for a kidney stone and diabetes. Dr. Badenhop's treatment records for August 2009 through May 2011 are in Exh. 12F, at Tr. 341-51.

R. 24. The administrative law judge noted that Cole's treatment record following his surgeries demonstrated that his condition was stable with only ongoing swelling of the right lower extremity. His medication remained consistent, and he attended follow-up appointments on a quarterly basis. *Id.* For these reasons, the decision of the administrative law judge to give only partial weight to Dr. Badenhop and her assessment of Cole's residual functional capacity are supported by substantial evidence in the record.

Further, it was not error for the administrative law judge to rely on Dr. Manos's April 2009 residual functional capacity opinion. The medical records indicate that plaintiff's right ankle impairment has remained stable. There is no difference in Dr. Badenhop's findings on clinical examination before April 2009 and those after that date.

<u>Psychological limitations</u>. The administrative law judge rejected the opinions of the examining and reviewing psychologists:

> As for the medical opinions relating to the psychological functioning, the undersigned gives little weight to the opinions of the State agency psychological consultant and the psychological consultative examiner. Caroline Lewin, Ph.D., indicated that the claimant had severe mental impairments including adjustment disorder and borderline intellectual functioning (Exhibits 7F-8F). Dr. Lewin put forward a residual functional capacity assessment limiting the claimant to handling simple instructions in a low stress work setting (Exhibit 7F, p.3). In reaching her conclusion, Dr. Lewin gave considerable weight to the consultative examination report of T. Rodney Swearingen, Ph.D., whose evaluation did not indicate significant limitations resulting from the claimant's mental impairments. Additionally, Dr. Lewin neither personally evaluated the claimant nor had the benefit of a complete record at the time of her review.

Notably, Dr. Swearingen credited the claimant's subjective complaints in concluding that the claimant would have moderate difficulty understanding, remembering, and following complex instructions despite evidence to the contrary (Exhibit 6F, p. 4). Firstly, the claimant has no history of mental health treatment, which indicates that the claimant's mental health condition is likely not so severe as to require counseling or medication. This conception is additionally supported by Dr. Swearingen's assigned global assessment of functioning ("GAF") score of 62, which indicates less than moderate symptoms or difficulties in social, occupational or school functioning according the American Psychiatric Association's *Diagnostic and Statistical Manual (Fourth Edition)* (Exhibit 6F, p.4). Even without mental health treatment, the claimant displayed a significant degree of functional capacity. Secondly, Dr. Swearingen's borderline intellectual functional diagnosis is at odds with the claimant's testimony that he successfully completed vocational school and performed all of the duties of a licensed electrician before his accident. He even reported that he belonged to an honor society at the vocational school because of his grades (Exhibit 4E). Thirdly, the claimant demonstrates an ability to perform a wide range of daily activities and quite clearly attributes any restriction in the area to his physical, not mental condition. Lastly, Dr. Swearingen's assignment of a GAF of 62 and consistent characterization of the claimant's impairment as mild conflicts with finding the existence of a severe mental impairment. In light of these reasons and the fact that Dr. Swearingen does not have a treating relationship with the claimant, his opinion insofar as it suggests the presence of a severe mental impairment is also given little weight.

(R. 21-22.) The administrative law judge properly considered what weight to accord the opinions of Drs. Swearingen and Lewin. Importantly, however, the administrative law judge posed a hypothetical question to the vocational expert that included a limitation to low stress work, which was defined as no assembly line production quotas and not fast paced. The vocational expert testified that even with the additional limitations a significant number of jobs would still be available to plaintiff.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R.  Abel
United States Magistrate Judge

26