**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THOMAS W. COLE,**<br><br>  **Plaintiff,**<br><br>  v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>  **Defendant.** | **Case No. 2:13-cv-250**<br>**Judge Peter C. Economus**<br>**Magistrate Judge Mark R. Abel**<br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the Court for consideration of the Report and Recommendation of the Magistrate Judge (Doc. 18) and Plaintiff Thomas W. Cole's objections thereto. (Doc. 19.) The Magistrate Judge recommended that the decision of the Commissioner denying Plaintiff Thomas W. Cole's application for Disability Insurance benefits be affirmed. For the reasons stated herein, the Court **OVERRULES** Cole's objections and **ADOPTS** the Magistrate Judge's recommendation.

**I.**

Cole's claims for Disability Insurance benefits arise, inter alia, from an injury to his right leg sustained in 2001 while he was working as an electrician. He filed for benefits on March 2, 2009, claiming that he became disabled as of September 30, 2006. (R. 109.) His application was initially denied on April 21, 2009 (R. 56) and subsequently denied upon reconsideration on November 18, 2009 (R. 61.) On January 14, 2010, he requested a hearing before an administrative law judge ("ALJ"). (R. 65.) The hearing was held before ALJ Amelia G. Lombardo on July 28, 2011. (R. 34.) On August 31, 2011, Judge Lombardo issued a ruling denying Cole's application. (R. 15.).

The Social Security Act defines "disability" to include an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). The regulations implementing the Act's disability benefits scheme call for a sequential evaluation process to determine whether an individual is disabled within the meaning of the Act:

> The sequential evaluation process is a series of five "steps" that we follow in a set order…. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (*See* paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow:
>
> > (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (*See* paragraph (b) of this section.)
> >
> > (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (*See* paragraph (c) of this section.)
> >
> > (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (*See* paragraph (d) of this section.)
> >
> > (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and §404.1560(b).
> >
> > (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If

>you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and §404.1560(c).

20 C.F.R. § 404.1520(a)(4).

In her decision, the ALJ followed the five-step analysis, and made the following findings of fact and/or conclusions of law:

>1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
>2. The claimant has not engaged in substantial gainful activity since September 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
>3. The claimant has the following severe impairments: residual effects of right leg and ankle fractures; and obesity (20 CFR 404.1520(c)).
>
>4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: The claimant cannot operate foot controls with the right lower extremity; cannot climb ladders, ropes, or scaffolds; and can only occasionally crouch, crawl, and climb stairs.
>
>6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
>7. The claimant was born on June 3, 1969 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).
>
>8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2006, through the date of this decision (20 CFR 404.1520(g)).

(R. 20–28.)  The ALJ also determined that Cole's purported mental impairments were not severe.  (*See* R. 20.)  The Social Security Administration's Appeals Council subsequently declined to review the ALJ's determination that Cole's application should be denied, rendering it the final decision of the Commissioner.  (R. 1.)

**II.**

Pursuant to 42 U.S.C. § 405(g), an applicant for social security benefits may file a civil action to obtain review of a final decision of the Commissioner of Social Security.  In such an action, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42. U.S.C. § 405(g).  In other words, the decision of the Commissioner must be affirmed if it "'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).  "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241 (quotations omitted).  Moreover, it is not necessary for the Court to agree with the Commissioner's decision, as long as that decision is supported by substantial evidence.  *Id.*

Cole filed with this Court a statement of errors essentially attacking two aspects of the ALJ's decision.  First, he argued that the ALJ's determination that he possessed the residual functional capacity ("RFC") to perform sedentary work was erroneous because the ALJ did not

4

properly evaluate the medical opinion evidence contained in the record.  Second, he maintained that the ALJ's determination that he did not suffer from severe mental impairments was not supported by substantial evidence.  The Magistrate Judge issued a Report and Recommendation concluding that the ALJ did not err in determining that Cole is capable of performing sedentary work and that he does not suffer from severe mental impairments, and thus recommending that ALJ's decision be affirmed.  (*See* Doc. 18.)

Cole has timely filed three objections to the Report and Recommendation.  The Court accordingly reviews the Magistrate Judge's findings de novo.  28 U.S.C. § 636(b)(1).

**III.**

In his objections, Cole again raises issues with the ALJ's determination of his RFC and the Magistrate Judge's recommended affirmance thereof and with the ALJ's determination that he does not suffer from severe psychological impairments.  The Court next considers these objections in turn, agreeing with Magistrate Judge's recommendation that the ALJ's decision denying Disability Insurance benefits to Cole should be affirmed.

**A.**

In his first objection, Cole argues that the ALJ's formulation of Cole's RFC was not supported by substantial evidence because "her evaluation and weighing of the medical opinions rested squarely upon a fundamentally incorrect statement"—"the assertion that treating source physician Dr. Badenhop's 'opinion does not deviate from the residual functional capacity outlined in this decision.'"  (Doc. 19 at 2.)

RFC is a tool used to determine what work an individual can possibly perform despite physical and/or mental impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  According to Social Security policy interpretation SSR 96-8p:

5

> RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 1996 WL 374184 at *2 (July 2, 1996) (emphasis in original).

RFC is relevant to steps four (past relevant work) and five (possible adjustment to other work) of the sequential evaluation process. *See* 20 C.F.R. § 404.1545(a)(5). In this case, it was the ALJ's responsibility to asses Cole's RFC. *Id.* § 404.1546(c). Regarding the evaluation of a claimant's physical abilities in determining RFC, the Social Security Administration's regulations provide that:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

*Id.* § 404.1545(b).

"The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96-8p, 1996 WL 374184 at *5. Exertional capacities relate to the strength demands of jobs such as sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1569a(b). Nonexertional capacities are not related to strength demands and can include "the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." *Id.* § 404.1569a(c)(vi).

The regulations divide jobs available in the national economy into five categories depending on the level of physical exertion required. These categories include sedentary, light, medium, heavy, and very heavy. *See id.* § 404.1567. According to SSR 96-8p:

> At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level.

SSR 96-8p, 1996 WL 374184 at *3.

As noted *supra*, the ALJ determined that Cole could no longer perform past relevant work, but that his RFC would allow him to perform sedentary jobs that do not include nonexertional capacities such as operating foot controls with his right lower extremity and climbing, and that would only occasionally require crouching, crawling, or climbing stairs. (*See* R. 22, 26.) The regulations describe sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The regulations also specify that the term "sedentary" and other terms related to physical exertion requirements for particular jobs have the same meaning as provided by the Department of Labor's Dictionary of Occupational Titles. *Id.* § 404.1567. The Dictionary of Occupational Titles defines sedentary as:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

DEPARTMENT OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, Appendix C (4th ed. rev. 1991), available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

In assessing Cole's RFC, the ALJ considered a variety of evidence, including Cole's testimony, a report submitted by his brother, and the opinions of two medical doctors—his treating physician Dr. Daniel Badenhop, and Dr. Diane Manos.  (*See* R. 22–26.)  Cole's objection takes issue with the ALJ's consideration of Dr. Badenhop's opinion.  However, after reviewing the record, the Court ultimately concludes that the ALJ's determination of Cole's RFC was supported by substantial evidence.  As such, the Court overrules Cole's first objection to the Report and Recommendation.

Dr. Badenhop submitted a form titled "Medical Source Statement About What the Claimant Can Still Do Despite Impairment(s)."  (R. 402.)  On the form, Dr. Badenhop indicated that, despite his impairments, Cole could: (1) sit continuously for up to two hours before needing to stand or walk about; (2) sit for a cumulative total of six hours in an eight hour workday; (3) stand or walk about continuously for one hour; and (4) stand or walk about for a cumulative total of one hour in an eight hour workday.  (R. 403–04.)  Dr. Badenhop also opined that Cole could occasionally (up to 1/3 of a day) lift and carry six to ten pounds.  (*See* R. 405.)  Dr. Manos opined that Cole could stand or walk for up to four hours in an eight hour workday.  (R. 291.)  The ALJ gave "significant, but not great, weight" to Dr. Badenhop's above findings, and "substantial weight" to Dr. Manos' findings.  (R. 26.)  In explaining the weight given to Dr. Manos' opinion, the ALJ stated:

> The opinion of Dr. Manos is generally consistent with the substantial evidence of record.  It is also important to note that State agency consultants are experts in the Social Security disability programs, whose opinions warrant close consideration (SSR 96-6p).  Additionally, this opinion was affirmed as written by a second medical consultant (Exhibit 9F).  Notably, the limitation to four hours of standing and/or walking puts the exertional capacity between the light and sedentary levels.  The undersigned has given the claimant the benefit of the doubt in placing his exertional capacity at a sedentary level.  With these considerations in mind, the undersigned gives Dr. Manos' opinion substantial weight.

(R. 26.)

Cole's objection centers on the ALJ's statement that "Dr. Badenhop's opinion does not deviate from the residual functional capacity outlined in this decision." (R. 26.) According to Cole, as Dr. Badenhop's opinion seems to be inconsistent with the ALJ's determination that Cole can perform sedentary work in two respects, the statement indicates that the ALJ erred by misconstruing the opinion.[1]

Cole first notes that Dr. Badenhop's opined that Cole could sit for up to six hours in a workday and stand and/or walk about for up to one hour. As these two numbers do not add up to an eight hour workday, Cole argues that the opinion must be interpreted to mean that Cole is unable to work any job. While the Court concedes that Cole's offered interpretation is possible, it also notes that other interpretations are also possible and perhaps more plausible. For instance, it seems likely that if Dr. Badenhop were attempting to opine that Cole is unable to work any job, he would have stated such a drastic conclusion directly. Additionally, the relevant questions on the form completed by Dr. Badenhop use the phrase "during an 8 hour work day," and despite the potential for inconsistency, there is no indication on the form that hours given for cumulative standing/walking and sitting need to total eight hours. (*See* R. 404.) In the Court's view, the manner in which Dr. Badenhop answered the relevant questions at best created an ambiguity, and the ALJ did not err by failing to consider the possible implications of the fact that he apparently only accounted for seven total hours. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Substantial evidence exists when a reasonable mind could accept

---

[1] The Court notes that other than the issue of occasionally standing or walking, Dr. Badenhop's opinion is otherwise consistent with the definition of sedentary work as the opinion states that Cole can occasionally lift up to 10 pounds. (R. 405.)

9

the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way.").

Second, Cole notes that Dr. Badenhop's opinion is inconsistent with sedentary work because by definition such work could include walking or standing for up to one third of an eight hour workday, while Dr. Badenhop opined that Cole could only walk or stand for one hour per day. While it is true that that aspect of Dr. Badenhop's opinion could possibly be said to deviate from the RFC determined by the ALJ, it is clear from reading her decision that the ALJ reviewed and understood Dr. Badenhop's opinion and gave more weight to Dr. Manos' opinion. In the decision, the ALJ specifically stated that "[Dr. Badenhop] added that the claimant could sit for a total of six hours and stand or walk for a total of one hour in an eight-hour workday (Exhibit 14F, pp. 3-4)." (R. 25.) Further, the statement; "the limitation to four hours standing and/or walking puts the exertional capacity between the light and sedentary levels," makes it clear that the ALJ credited Dr. Manos' opinion regarding standing and walking. (R. 26.) While the ALJ perhaps made a technically incorrect statement regarding Dr. Badenhop's opinion and her assessment of Cole's RFC, the context of the remainder of the decision reveals that she did not misconstrue or fail to take that opinion into consideration.

For the above-stated reasons, Cole's first objection to the Report and Recommendation is overruled, and the Court adopts the Magistrate Judge's analysis and conclusions regarding the RFC assessment of the ALJ.

**B.**

In his second objection, which is closely related to his first, Cole asserts that the ALJ erred by failing to give controlling weight to Dr. Badenhop's opinion as his treating physician.

The Social Security Administration's regulations govern how medical opinion testimony should be evaluated and weighted in making disability determinations, and provide that:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. ***If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.***

20 C.F.R. § 404.1527(c)(2) (emphasis supplied).

The ALJ ruled that, with the exception of his finding that Cole would miss work more than three times per month because of his impairments or treatment, Dr. Badenhop's opinion should be afforded "significant, but not great, weight." (R. 26.) She thus found that Dr. Badenhop's opinion was not entitled to controlling weight. The Magistrate Judge concluded that this ruling was supported by substantial evidence. The Court agrees, overrules Cole's second objection, and adopts the Magistrate Judge's analysis and conclusions with regard to the treating source rule.

The thrust of Cole's second objection again deals with the ALJ's statement that "Dr. Badenhop's opinion does not deviate from the residual functional capacity outlined in this decision." He again argues that the ALJ misconstrued Dr. Badenhop's opinion by rejecting his conclusion that Cole would miss work more than three times per month. In doing so, the ALJ stated, "Dr. Badenhop's opinion regarding absences is not supported by any explanation and the evidence shows that the claimant has received treatment on a quarterly basis, much more infrequently than the three times per month suggested by Dr. Badenhop." (R. 26.) Cole argues that the ALJ's response misconstrued the opinion because the specific question to which Dr.

11

Badenhop was replying was focused on absences caused by *impairments* and treatment, not just treatment. (*See* R. 406.) However, as indicated by the ALJ, the opinion is not supported by any explanation, and, significantly, Cole himself has cited nothing in the record that supports Dr. Badenhop's conclusion in this regard. Accordingly, the ALJ did not err in deciding that the aspect of the opinion dealing with absences should not be given controlling weight as the opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques."

With regard to Dr. Badenhop's opinion as to the amount of time Cole can stand or walk during the workday, the Court also notes that this opinion is inconsistent with that of Dr. Manos. Further, the ALJ cited other evidence in the record potentially calling into question whether Cole could only stand or walk for one hour per day:

> Notwithstanding the claimant's alleged limitations, the record shows that he continues to perform a wide range of daily activities indicative of significant functional capacity. The claimant's brother, with whom the claimant lives, submitted a third party function report indicating that the claimant makes lunch and occasionally breakfast for his mother and drives his mother to stores and to doctors appointments (Exhibit 10E, p. 2). He further noted that claimant independently prepares meals on a daily basis, does his own laundry, sweeps with a broom, carries out light bags of trash, and brings in the mail (Exhibit 10E, p. 3). He added that the claimant leaves the house everyday unless it rains, shops once or twice a week, and goes places independently (Exhibit 10E, pp. 4-5). Moreover, to the consultative examiner, the claimant acknowledged performing a number of daily activities on a regular basis including cooking, cleaning, shopping, independent personal care, going to appointments, and watching television (Exhibit 6F, p. 3). An individual with the claimant's stated pain profile would not reasonably be expected to perform this wide array of daily activities.

(R. 24.). As such, substantial evidence existed in the record from which the ALJ could conclude that Dr. Badenhop's opinion should not be given controlling weight on the grounds that other substantial evidence in the case record conflicted with the opinion.

**C.**

In his final objection, Cole argues that the ALJ's decision should be reversed because her determination that Cole does not have a severe mental impairment is not supported by substantial evidence. Again concluding that the ALJ's decision was supported by substantial evidence, the Court overrules this objection, and adopts the Magistrate Judge's analysis and conclusions.

According to Cole, the ALJ improperly rejected the opinions of psychologists Drs. Rodney Swearingen and Caroline Lewin. Dr. Swearingen evaluated Cole in person while Dr. Lewin's assessment relied upon Dr. Swearingen's findings. In determining that Cole's mental impairments were not severe, the ALJ offered the following, detailed explanation:

> The claimant's alleged mental impairments of adjustment disorder and borderline intellectual functioning, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. In no area does the claimant demonstrate more than mild restriction attributable to his alleged mental impairments. Instead, the claimant's hearing testimony shows that he blames his purported limited daily activities on his physical condition. Moreover, the claimant has acknowledged performing a number of daily activities on a regular basis including cooking, cleaning, shopping, independent personal care, going to appointments, and watching television (Exhibit 6F, p. 3). Although the claimant testified that he experiences positive symptoms of abnormal mental content that may impede social functioning like suspicion of others, ruminative thoughts, obsessions, dissociative experiences, delusions, hallucinations, or compulsive behaviors (Exhibit 6F, p. 3), his brother noted that he visits with others and talks to people on the phone, mostly on weekends (Exhibit 10E, p. 5) and at the consultative examination, the claimant interacted appropriately, showed good concentration, remained on task, exhibited average persistence, worked at a moderate pace, and had no difficulty understanding or following simple directions (Exhibit 6F, p. 3). The claimant's brother reported that the claimant has no trouble paying attention, follows written instructions very well, and handles stress very well (Exhibit 10E, p. 7). As for episodes of decompensation, the claimant has experienced no episodes of

decompensation, which have been of extended duration and in fact, receives no mental health treatment whatsoever.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1)).

As for the medial opinions relating to psychological functioning, the undersigned gives little weight to the opinions of the State agency psychological consultant and the psychological consultative examiner. Caroline Lewin, Ph.D., indicated that the claimant had severe mental impairments including adjustment disorder and borderline intellectual functioning (Exhibits 7F-8F). Dr. Lewin put forward a residual functional capacity assessment limiting the claimant to handling simple instructions in a low stress work setting (Exhibit 7F, p. 3). In reaching her conclusion, Dr. Lewin gave considerable weight to the consultative examination report of T. Rodney Swearingen, Ph.D., whose evaluation did not indicate significant limitations resulting from the claimant's mental impairments. Additionally, Dr. Lewin neither personally evaluated the claimant nor had the benefit of a complete record at the time of her review.

Notably, Dr. Swearingen credited the claimant's subjective complaints in concluding that the claimant would have moderate difficulty understanding, remembering, and following complex instructions despite evidence to the contrary (Exhibit 6F, p. 4). Firstly, the claimant has no history of mental health treatment, which indicates that the claimant's mental health condition is likely not so severe as to require counseling or medication. This conception is additionally supported by Dr. Swearingen's assigned global assessment of functioning ("GAF") score of 62, which indicates less than moderate symptoms or difficulties in social, occupational or school functioning according to the American Psychiatric Association's *Diagnostic and Statistical Manual (Fourth Edition)* (Exhibit 6F, p. 4). Even without mental health treatment, the claimant displayed a significant degree of functional capacity. Secondly, Dr. Swearingen's borderline intellectual functional diagnosis is at odds with the claimant's testimony that he successfully completed vocational school and performed all of the duties of a licensed electrician before his accident. He even reported that he belonged to an honor society at the vocational school because of his grades (Exhibit 4E). Thirdly, the claimant demonstrates an ability to perform a wide range of daily activities and quite clearly attributes any restriction in this area to his physical, not mental, condition. Lastly, Dr. Swearingen's assignment of a GAF of 62 and consistent characterization of the claimant's impairment as mild conflicts with finding the existence of a severe mental impairment. In light of these reasons and the fact that Dr. Swearingen does not have a treating relationship with the claimant, his opinion insofar as it suggests the presence of a severe mental impairment is also given little weight.

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in Paragraph B of the adult mental disorders listings in 12.00 of the Listings of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(R. 20–22.)

A review of the above indicates that substantial evidence, including; Cole's testimony, his brother's report, the assessment of Dr. Swearingen, and inconsistencies therein, supported the ALJ's decisions that the opinions of Drs. Lewin and Swearingen should be afforded little weight and that Cole does not suffer from a severe mental impairment. Specifically, the evidence revealed that Cole cares for himself, was able to successfully perform all the job duties of a licensed electrician, had been in an honor society in vocational school, had no difficulty in following simple instructions, and that his global assessment of functioning score revealed less than moderate difficulties in social or work settings. As such, the ALJ did not err in concluding that Cole's mental impairments were no more than mild. *See* 20 C.F.R. § 404.1520a(d)(1) ("[i]f we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe").

Additionally, regarding the Report and Recommendation, Cole "objects to the assertion that asking a hypothetical question with a limitation to low-stress work was somehow curative of this rejection of the preponderance of the evidence [regarding Cole's mental impairments]." (Doc. 19 at 8.) The Court also overrules this objection. First, the Court has concluded that the ALJ's determination that Cole does not suffer from severe mental impairments was supported by substantial evidence. The substantial evidence standard requires less than a preponderance of the

evidence, *Rogers*, 486 F.3d at 241, and it is irrelevant that other conclusions from the evidence are possible as long as substantial evidence supports the ALJ's decision. *See* Casey, 987 F.2d at 1230. Second, it is unclear how the hypothetical posed to the vocational expert, which was related to step five of the sequential evaluation (see R. 50), is in any way relevant to the step-two inquiry into the severity of Cole's medical impairments.

### IV.

For the above-stated reasons, the Court adopts the Report and Recommendation of the Magistrate Judge (Doc. 18.). The Commissioner's decision is **AFFIRMED** and this action is **DISMISSED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE